**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| LIONEL ALEXANDER, | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| THE CITY OF ROUND ROCK, TEXAS; | § | A-15-CV-617-SS-ML |
| OFFICERS MARCIANO GARZA, SGT. | § | |
| GREG BRUNSON; SGT. SAMPSON | § | |
| CONNELL; OFFICER TRACY STAGGS; | § | |
| CITY OF ROUND ROCK POLICE | § | |
| OFFICERS "JOHN DOES". | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE SAM SPARKS
UNITED STATES DISTRICT JUDGE

Before the Court are "The City of Round Rock's Motion to Dismiss and Brief in Support Thereof" (City's Mot. Dism.) [Dkt. #12]; "Defendants' Motion and Brief to Dismiss for Failure to State a Claim and Alternative Request for Rule 7(a) Reply to Immunity Defense" (Officers' Mot. Dism.) [Dkt. #13], and the related responses and replies to each Motion. The Motions were referred by United States District Judge Sam Sparks to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. After reviewing the motions and related briefing, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

1

## I.  BACKGROUND

The factual allegations of the Complaint and the factual allegations supporting Defendants' assertion of qualified immunity are as follows:  On September 26, 2013, Plaintiff Lionel Alexander was a guest at the Extended Stay America located at 555 South Interstate 35, Round Rock, TX 78664.  Compl. [Dkt. #1] at 3.  At approximately 9:15 p.m., Mr. Alexander returned to the hotel after an errand and saw a stray cat in the parking lot.  *Id.*  He stopped his car, climbed out into the parking lot, and "peered into the grass" to find the cat.  *Id.*

Officer Marciano Garza was patrolling the area at the time.  Ans. [Dkt #14] at 10.  The Round Rock Police Department "had noted an increase in crime in this area between the Extended Stay America Hotel and other hotels in the vicinity in the weeks before the incident."  *Id.*  Officer Garza, seeing Plaintiff standing by a car in the hotel parking lot, peering into the grass, decided to investigate.  *Id.*  According to Officer Garza, he believed Plaintiff's behavior, in the context of the late hour and the high crime location, was consistent with possible burglary, solicitation, or trafficking.  *Id.*

As Officer Garza pulled into the hotel parking lot, Plaintiff gave up on the cat, got in his car, and began to drive closer to his hotel room.  Compl. [Dkt. #1] at 3-4.  Officer Garza turned on his police lights and pulled Alexander over.  *Id.* at 4.  Officer Garza told Alexander he was curious about what Alexander was doing.  *Id.*  Alexander provided Officer Garza his driver's license but told Officer Garza he would not answer his questions.  *Id.*  Officer Garza "immediately radioed for backup, citing 'noncompliance.'"  *Id.*  Officer Garza continued to question Alexander, telling Alexander to keep his hands where Officer Garza could see them, until the backup officers arrived at the scene.  *Id.*  At that point, Officer Garza instructed

Alexander to get out of the car.  *Id.*  Alexander asked why, and Officer Garza replied "because I asked you to."  *Id.*  Alexander responded that he "didn't think he was legally required to do so."  *Id.* at 4-5.  As he was making this statement, Officer Garza and several other officers pulled him out of the car and pinned him face down on the ground.  *Id.* at 5.

Alexander felt "at least three officers on top of his body, manipulating his limbs and putting pressure on his torso, neck, and head."  *Id.*  The officers handcuffed Alexander and placed him on a curb.  *Id.*  Officer Garza then said "Are you ready to talk to me now?"  *Id.*  Alexander cursed in response.  *Id.*  Officers then shackled his legs, and Officer Garza informed Alexander he was under arrest for disorderly conduct, namely uttering an expletive in a public place.  *Id.*  In his police report, however, Officer Garza cited the reason for Alexander's arrest as "resisting a search."  *Id.* at 6.  Alexander describes a moment in which, while Alexander was handcuffed in the back of the police cruiser, "Officer Garza temporarily removed his body microphone and walked away from the police cruiser in order to have a discussion with another Defendant Officer . . .."  Compl. [Dkt. #1] at 6.  The Defendant Officers characterize this moment as follows:  "The officers on scene discussed the situation and Mr. Alexander was charged with resisting arrest, search, or transport."  *Ans.* [Dkt. #14] at 12.

After Alexander was arrested, the Defendant Officers searched Alexander's person and vehicle.  *Id.*  Officer Garza then drove Alexander to the Round Rock police station.  *Id.*  Alexander was transferred to the Williamson County Jail and remained there until approximately 5:00 P.M. September 27, 2013.  *Id.*  Alexander filed a complaint against Officer Garza with the Round Rock Police Department on October 7, 2013.  *Id.*  The City determined the events did in fact occur, but that Defendant Garza's conduct was within the policy of the Round Rock Police Department.  *Id.*

3

On July 24, 2015, Alexander filed this lawsuit in the United States District Court for the Western District of Texas.  *Id.*  at 1.  He sues the City of Round Rock, Texas ("The City"); Officer Garza; Sergeant Greg Brunson, Sergeant Sampson Connell, and Officer Tracy Staggs (the "Officer Defendants"); as well as an unknown number of "John Doe" officers who allegedly participated as backup in his arrest.  *Id.*  While Alexander's Complaint does not contain allegations specific to Sergeants Brunson or Connell or Officer Staggs, the Officer Defendants' Answer contains specific factual allegations relevant to the individual Officer Defendants' assertion of qualified immunity.  Ans. [Dkt. #14] at 11.  These factual allegations acknowledge that Sergeants Brunson and Connell provided backup to Officer Garza and attempted to restrain and handcuff Mr. Alexander.  *Id.*  No factual allegation concerning any particular conduct of Officer Staggs is contained in any of the pleadings.  Further, no allegations specific to any particular "John Doe" Defendant are made in any of the pleadings.

Alexander complains he sustained injury to his mouth and emotional and psychological injury as a result of this incident.  Compl. [Dkt. #1] at 6.  He cites no permanent injury to his mouth or any other lasting physical harm, but he asserts he is now "fearful of being groundlessly abused by police officers."  *Id.*  Alexander seeks damages, punitive damages, attorney's fees, and "appropriate declaratory and injunctive relief" pursuant to 42 U.S.C. § 1983 and Article I, Sections Eight, Nine, Ten, and Nineteen of the Texas Constitiution.  *Id.* at 13.  The City has moved to dismiss the claims against it, asserting not only that Alexander has failed to state any meritorious Section 1983 claims, but also that his Texas Constitutional claims against the City are barred by governmental immunity, and as to the Officer Defendants, such claims are barred by the Election of Remedies doctrine codified at Texas Civil Practice and Remedies Code,

Section 101.106(a).   The Officer Defendants, for their part, move for dismissal on grounds of qualified immunity.

## II.   STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.   *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007).   Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id*., 550 U.S. at  570.

In this case, the individual Officer Defendants have asserted they are entitled to qualified immunity.   Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of . . . immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).   When the defense of qualified immunity is raised in a motion to dismiss, the complaint is subject to a heightened pleading requirement, which requires "claims of specific conduct and actions giving rise to a constitutional violation." *Cunningham v. City of Balch Springs*, No. 3:14-CV-59-L, 2015 U.S. Dist. LEXIS 80145 (N.D. Tex. June 19, 2015) (citing *Schultea v. Wood*, 47 F.3d 1427, 1432, 1434 (5th Cir. 1995) (en banc)).

**III.   ANALYSIS**

For the reasons articulated fully below, the Court has no trouble finding that the factual allegations of the complaint, read in the light most favorable to Plaintiff, do not state any viable claim for violation of the United States Constitution or the Texas Constitution.  Because no underlying legal right has been infringed, the City's and the Officer Defendants' Motions to Dismiss should be granted.

**A.  The Initial Stop Was Supported By Reasonable Suspicion**

Garza certainly had the right to turn into the parking lot and ask Alexander what he was doing, and this simple act does not implicate the Fourth Amendment.  *Fla. v. Bostick*, 501 U.S. 429, 434 (1991).  When Alexander got into his car and began to drive away, however, Garza's decision to turn on his lights, stop Alexander's car and question Alexander rose to the level of a *Terry* stop, an investigative detention.  *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (citing *Brendlin v. California*, 551 U.S. 249, 255 (2007)).

Under *Terry*, "if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime, the officer  may briefly detain—that is, 'seize'—the person to investigate." *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000) (discussing *Terry v. Ohio*, 392 U.S. 1 (1968)). "Such a belief must be founded on specific and articulable facts rather than on a mere suspicion or 'hunch.'" *United States v. Sanders*, 994 F.2d 200, 203 (5th Cir. 1993); *see also United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). The government has the burden of proving the specific and articulable facts that support the reasonableness of the suspicion. *United States v. Jaquez*, 421 F.3d 338, 341 (5th Cir. 2005).  The Constitution requires only a minimum

level of objective justification, considering the totality of the circumstances, for an investigating officer's actions. *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994).

Whether the facts shown support reasonable suspicion is a question of law. *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014). In determining whether the officer's suspicion, as based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered. *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). "[I]t is improper for a court to refuse to find that reasonable suspicion existed because each of a set of circumstances has an innocent explanation. . . . The proper question is whether or not the entire set of circumstances, taken together, created reasonable suspicion of criminal activity." *United States v. Pack*, 612 F.3d 341, 358 (5th Cir. 2010) (internal citations omitted). "This inquiry does not depend on the 'officer's state of mind, or his stated justification for his actions.'" *United States v. Tuggle*, 284 F. App'x. 218, 223 (5th Cir. 2008) (quoting *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc)). Rather, the legal question is whether the facts and circumstances, viewed from the standpoint of a reasonable police officer, objectively justify the actions taken by the officer. *Tuggle*, 284 F. App'x at 223.

The circumstances that raised Officer Garza's suspicions in this care are as follows: (1) By Plaintiff's own account, it was about 9:15 p.m. and Plaintiff was standing outside his car, "peer[ing] into the grass" in the parking lot of the Extended Stay America hotel on Interstate 35. Compl. [Dkt. #1] at 3. (2) "The Round Rock Police Department had noted an increase in crime in this area between the Extended Stay America Hotel and other hotels in the vicinity in the weeks before this incident." Ans. [Dkt. #14] at 10. (3) As Officer Garza turned into the hotel parking lot to look into Plaintiff's behavior, Alexander got in the car and started to drive. Compl. [Dkt. #1] at 3. Based on these facts, Garza suspected Alexander of involvement in "attempted

burglary, solicitation, or trafficking." *Id.*   He turned on his lights and initiated the investigative stop. *Id.*

Alexander insists Garza had no reason to stop him because his actions did not demonstrate any connection between Alexander and the commission of a particular crime.  Resp. [Dkt. #16] at 8.  In support of this argument, Alexander relies on cases holding that the Fourth Amendment is violated when an officer initiates an investigative detention based solely on an individual's presence near the scene of a recent crime or in a "high-crime" area.  *See, e.g., U.S. v. Jaquez*, 421 F.3d 338, 340-41 (5th Cir. 2005); *U.S. v. Benjamin*, 481 F. App'x 92, 95-96 (5th Cir. 2010); *Florida v. J.L.*, 529 U.S. 266, 272 (2000).  While it is certainly true that a person's mere presence in a high crime area does not give rise to reasonable suspicion, the Supreme Court has acknowledged that a high crime setting is a legitimate factor to consider in evaluating the totality of the circumstances.  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).  Moreover, Alexander "was not merely in the vicinity of another's wrongdoing.  Rather, his actions raised suspicion that he was the one engaged in wrongdoing."  *Tuggle*, 284 F. App'x at 226 n.3.

Specifically, Alexander was standing outside a car and peering into the grass in the dark in a parking lot specifically known to be a criminal hot spot.  Further, immediately after Officer Garza turned into the parking lot, Alexander got into the car and began to drive.  The suspect "does not have to run away for his behavior to be considered unprovoked flight."  *Tuggle*, 284 F. App'x at 225.   Alexander's act of getting into his car and driving as Officer Garza's vehicle

approached "is not necessarily indicative of wrongdoing, but it is certainly suggestive of it." *Wardlow*, 528 U.S. at 122.[1]

Officer Garza's decision to stop the vehicle was not based on an inchoate hunch. *Compare United States v. Jenson*, 462 F3d 399, 404 (5th Cir. 2006) (impermissible to stop driver on the grounds that "when you feel something is illegal, you know it."). Rather, Officer Garza observed Alexander engaging in specific activity—standing next to a car and peering into the bushes—at a specific location and time—late at night in a hotel parking lot known as a high-crime location—and further saw that Alexander got in the car and began to move (i.e., flee) as soon as Officer Garza entered the parking lot. These circumstances, taken together, were consistent in Officer Garza's experience with several criminal activities: burglary, solicitation, and trafficking. Ans. [Dkt. #14] at 10. Officer Garza did not violate the Fourth Amendment in detaining Alexander long enough to determine whether or not his suspicions of criminal activity were correct. *Pack*, 612 F.3d at 358.

### B.  Officer Safety Necessitated Calling For Backup and Removing Alexander from the Vehicle

Officer Garza initially tried to assess the situation by simply asking Alexander basic questions. Alexander provided his I.D. but responded that he would not answer any questions. Compl. [Dkt. #1] at 4. Alexander contends there is no factual allegation in the record that would support continuing his detention after he presented identification to the officer and refused to

---

[1] Alexander has innocent explanations for each individual action he took (he was looking in the grass for a stray cat and his decision to get in the car and move closer to his hotel room to park merely coincided with Officer Garza's entrance by happenstance). Of course, he did not share any of these reasons for his actions with Officer Garza. Faced with Alexander's unexplained actions, Officer Garza was entitled to consider the totality of the circumstances, including not only each of Alexander's actions but the sequence of events as a whole, in the context in which it occurred. *Pack*, 612 F.3d at 358.

answer questions on a consensual basis. *Jenson*, 462 F.3d 399, 404 (5th Cir. Tex. 2006) ("If all computer checks come back clean, then as a general matter reasonable suspicion disappears, and there is no legitimate reason for extending the stop."); *United States v. Gordon*, 917 F. Supp. 485, 488 (W.D. Tex. 1996) ("At the point that Gordon signed the Warning Citation, and refused to consent to a search of his vehicle, the encounter was over. Absent a reasonable suspicion for a continued detention of the vehicle, Gordon was free to leave the scene.")

In making this argument, Alexander conflates a traffic stop (which is a form of *Terry* stop) with a *Terry* stop that simply happens to take place in a car. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (distinguishing between a "traffic stop" and the similar, but distinct "Terry stop" and noting in each case, "the scope of the detention must be carefully tailored to its underlying justification.") (internal citations omitted); *see also United States v. Sharpe*, 470 U.S. 675, 677-79 (officers who suspected two heavily loaded vehicles driving through a known drug trafficking corridor were loaded with drugs initiated an "investigative stop," not a traffic stop). The purpose of a traffic stop is to address a traffic violation, and the scope of a traffic stop is thus limited to activities, such as running a driver's identification and insurance, that are reasonably related to "addressing the infraction." *Id.* at 1614-15. But Officer Garza was not investigating Alexander's driving; he was investigating his suspicion that Alexander was engaged in criminal activity in the parking lot. The fact that Alexander chose to get into the car does not change the purpose or permissible scope of Officer Garza's investigative detention. *See, e.g.*, *Cox v. State*, 442 S.W.2d 696, 697 (Tex. Crim. App. 1969) (officer responding to a disturbance call at a hospital lawfully detained and frisked a man who was found standing in the parking lot, but who got into his car and began to drive off as police entered the

lot).  Officer Garza was entitled to continue the *Terry* stop for as long as reasonably necessary to confirm or allay his suspicions of criminal activity.  *Pack,* 612 F.3d at 358.

Alexander makes much of what Officer Garza allegedly thought about his initial refusal to answer questions:  "Officer Garza believes that people who exercise their constitutional rights tend to be members of quasi-terrorist organizations and are a danger to police officers."  Compl. [Dkt. #1] at 4.  But Officer Garza's subjective belief about the import of Alexander's refusal to answer has no bearing on the reasonableness of the *Terry* stop.  *Tuggle*, 284 F. App'x. at 225. The question is whether a reasonable officer would feel the need to call for backup, wait for backup, and have Alexander exit the vehicle in order to investigate the conditions that led the officer to suspect criminal activity.  *Id.*

Officer Garza's decisions to call for backup, wait for backup, and have Alexander step out of the car were all objectively reasonable steps to maintain officer safety in the course of the investigatory stop.  *See United States v. Rideau*, 969 F.2d 1572, 1575 (5th Cir. 1992) ("[W]hen someone engages in suspicious activity in a high crime area, where weapons and violence abound, police officers must be particularly cautious in approaching and questioning him."); *see also Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977) (asking a suspect to exit the vehicle during a *Terry* stop involving an automobile "hardly rises to the level of a petty indignity," much less a Fourth Amendment violation).  Extending Alexander's detention long enough to take these reasonable precautions does not violate the Fourth Amendment.  *See Sharpe*, 470 U.S. at 686-87 (permissible length of an investigative detention depends on whether officers were "diligently pursuing" the inquiry, and may include time reasonably needed to "enlist… the help of local police" where appropriate).

**C.  Alexander's Resistance to Exiting the Vehicle Warranted His Forcible Removal and Arrest**

Alexander's refusal to answer questions, without more, is not reasonable cause for detaining him.  *Fla. v. Bostick*, 501 U.S. 429, 436-437 (1991) ("a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."); *Kolender v. Lawson*, 461 U.S. 352, 360 n.9 (U.S. 1983) (It is a 'settled principle that while the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer.') (internal citation omitted). Alexander's refusal to answer questions, however, cannot be separated from its context; Alexander also refused to exit the vehicle.  Alexander characterizes his refusal to exit the vehicle as a statement to the officers that "he didn't think he was legally required to do so."  Compl. [Dkt. #1] at 5.  Besides being an incorrect statement of the law, *see Mimms*, 434 U.S. at 111, Alexander's statement is not mere speech—it is linked with his act of remaining inside the vehicle despite at least two instructions to exit.   Compl. [Dkt. #1] at 4-5. This act of resistance cannot be separated from its context.  *Rideau*, 969 F.2d at 1575. ("Stated abstractly, specific actions may be construed as more or less hostile depending on the setting in which they occur."). The Supreme Court has recognized that *Terry* stops involving automobiles "are 'especially fraught with danger to police officers,'" *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)).  In this context, the government has a legitimate safety interest in "exercis[ing] unquestioned command of the situation."  *Johnson*, 555 U.S. at 330 (quoting *Maryland v. Willson,* 519 U.S. at 414).   Moreover, under Texas law, "the act of resisting can supply probable cause for the arrest itself."  *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013).   Under these circumstances, the Fourth Amendment was not violated when

Officer Garza and his backup forced Alexander from the vehicle, handcuffed him and arrested him. *Id.*

Alexander maintains he was arrested for cursing at the officers as they were handcuffing him. Compl. [Dkt. #1] at 5. He alleges Officer Garza verbally informed him the reason for his arrest was originally "disorderly conduct" based on his foul language in a public place, but the officer changed the reason for arrest to "resisting a search" in the written police report to cover up this violation of his right to free speech. *Id.* at 5-6. It is true that the mere act of cursing at a police officer is not grounds for detention or arrest, *Brooks v. City of W. Point*, No. 14-60357, 2016 U.S. App. LEXIS 2367, *6 (5th Cir. Feb. 11, 2016), citing *Keenan v. Tejeda*, 290 F.3d 252 (258 (5th Cir. 2008). Nor would Alexander's curses satisfy the "fighting words" requirement to establish probable cause for a disorderly conduct arrest. *Id.*; *see also* Tex. Pen. Code § 42.01(a)(1). The factual allegations in this case, however, establish Alexander's cursing at the officers came during or immediately after their attempt to forcibly extract him from a vehicle he refused to exit. Compl. [Dkt. #1] at 5-6. An arrest based on this resistance to a search is supported by probable cause, as discussed above. *Ramirez v.* Martinez, 716 F.3d at 376. Moreover, it is the "resisting a search" charge that actually formed the basis of the arrest in the written police report. Even taking as true Alexander's allegation that Officer Garza changed the offense from disorderly conduct to resisting a search, it is well established that an arresting officer is entitled to qualified immunity for an arguably improper arrest so long as "the charged and uncharged offense, for which there was arguable probable cause, each arose or stemmed from the observed conduct" that happened in the officer's presence. *Vance v. Nunnery*, 137 F.3d 270, 274 (5th Cir. 1998).

13

It follows from the fact that there was probable cause for the arrest that Officer Garza has qualified immunity as to any claim plaintiff may be making for retaliatory arrest in violation of the First Amendment. *See Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (holding that a "First Amendment right to be free from a retaliatory arrest that is supported by probable cause" has never been a clearly established right); *Ashcraft v. City of Vicksburg*, 561 F. App'x 399, 401 (5th Cir. 2014) (holding that the defendant was entitled to qualified immunity on First Amendment retaliatory arrest claim because the plaintiff "has not demonstrated that she had a clearly established 'right' to be free from a retaliatory arrest that was otherwise supported by probable cause"); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (explaining that "[i]f probable cause existed, ... or if reasonable police officers could believe probable cause existed," then officers are entitled to qualified immunity on claim for retaliatory seizure); *Brooks v. City of West Point*, 18 F. Supp. 3d 790, 797 (N.D. Miss. 2014) (dismissing individual capacity claim against officers for retaliatory arrest where there was probable cause for the arrest). Additionally, the search of Plaintiff's person and vehicle were lawful searches incident to this arrest, and are not violations of the Fourth Amendment. *Arizona v. Gant*, 556 U.S. 332, 333-34 (2009) (a search of a vehicle incident to arrest is lawful when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)).

### D.  The Officers' Use of Force Was Objectively Reasonable

Alexander contends the Defendant Officers used excessive force in pulling him from the car to the ground, handcuffing, and shackling him.  In order to state a claim for excessive force in violation of the Constitution, a plaintiff "must allege (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively

14

unreasonable." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).  The standard for determining whether the use of force is objectively unreasonable is well established:  it is a fact sensitive inquiry that turns on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. Connor,* 490 U.S. 386, 396 (1989).   Additional considerations that "may bear on the reasonableness or unreasonableness of the force used [include]: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

In this case, Plaintiff refused to get out of the truck and cursed at the arresting officers, but he alleges he offered no other resistance to the officers' efforts to restrain him.  He asserts multiple officers nevertheless forced him to the ground and "mashed his face into the ground," also "pinn[ing] him by pressing [a] boot or knee on the back of his neck."  Compl. [Dkt. #1] at 5. He acknowledges these actions were part of the officers' attempts to pull him from the truck and restrain him.  *Id.*  Once he was handcuffed the officers "placed him on a curb" and allegedly shackled his legs, but used no additional force while they conducted a search of his person and his vehicle incident to arrest.  *Id.*  Plaintiff does not allege any lasting physical injury from the experience, though he does assert he suffered pain and psychological trauma because of the incident. *Id.* at 8.

It is well settled that "the right to make an arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  *Bush*, 513 F.3d at 502

(quoting *Graham*, 490 U.S. at 396).  The Fifth Circuit recently issued an opinion granting qualified immunity to an officer who tased an "unarmed, seated subject who fail[ed] to comply with an order to get on the ground."  *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015). The Court reasoned the law allows an officer to "use nonlethal force to gain compliance if a subject actively resists arrest and does not comply with verbal task directions to get on the ground."  *Id.* In this case, Plaintiff was not tased and does not claim any permanent injury; Plaintiff's own account of the force used against him is that the officers grabbed and pinned him in an effort to remove him from a truck he would not voluntarily exit.  "Officers may consider a suspect's refusal to comply with instructions . . . in assessing whether physical force is needed to effectuate the suspect's compliance."  *Id.*  (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).  Under these circumstances, the use of force alleged by Plaintiff is objectively reasonable and presents no Fourth Amendment violation.  *Poole v. City of Shreveport*, 691 F.3d 694, 629 (5th Cir. 2012) (measured use of force is objectively reasonable response to suspect's noncompliance with verbal commands).

### E.  Alexander States No Viable Texas Constitutional Claims

Alexander also sues all Defendants under the Texas Constitution, Article I, Sections 8, 9, 10, and 19.  Compl. [Dkt. #1] at 10-12.  The City contends these "state law tort claims" trigger Section 101.106(a) of the Texas Tort Claims Act, which allows the City to move for dismissal of tort claims against its individual employees in the scope of their employment.  TEX. CIV. PRAC. & REM. CODE § 101.106(a).  Such claims "must proceed against the government or not at all." *Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 412 (Tex. 2015). Alexander contends his "state law constitutional claims" are not tort claims and therefore do not trigger the election of remedies provision.  Plaintiff is correct that "Subsection 101.106(e) of the

16

Tort Claims Act does not contemplate dismissal of claims asserted independently of that Act." Cannon, 453 S.W. 3d at 412.  Nevertheless, "[t]o the extent that [Alexander] sought damages for alleged constitutional violations, his claims were brought 'under the Texas Tort Claims Act' for purposes of Section 101.106(e)."  *City of Arlington v. Randall*, 301 S.W.3d 896, 904 (Tex. App.—Fort Worth 2009, no pet.) (rev'd in part on other grounds by *Cannon*, 453 S.W.3d 411 at 416, n.10).  Therefore, any claims for damages against the individual Officer Defendants based on alleged violations of the Texas Constitution must be dismissed.  *Id.*

Alexander may proceed against the City on such claims, *id.*, but it will do him little good: Texas law provides no private right of action for money damages for violations of state constitutional provisions.  *Daniels v. City of Arlington*, 246 F.3d 500, 507 (5th Cir. 2001) ("tort damages are not recoverable for violations of the Texas Constitution) (citing *City of Beaumont v. Bouillon*, 896 S.W.2d 143, 147 (Tex. 1995)).  Nor can Alexander recover against the City under a common law tort theory, because his allegations of false arrest and excessive force concern intentional torts for which the City may claim governmental immunity.  Tex. Civ. Prac. & Rem. Code § 101.057; *State Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

Alexander claims he seeks only equitable relief for the alleged violations of the state constitutional provisions.  His equitable claims against the individual Officer Defendants, in theory, may proceed, as those claims are not brought "under the Texas Tort Claims Act" but may proceed as direct claims for violation of the Texas Constitution. *Id.* (citing *City of Elsa v. M.A.L.,* 226 S.W.3d 390, 392 (Tex. 2007)).  As Defendants point out, however, the incident that forms the basis of Alexander's complaint is in the past; there is no ongoing conduct against Alexander that would warrant equitable declaratory or injunctive relief.  *City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007) (per curiam).  The only remedy plausibly available to him is a

damages remedy, which fails against the individual Officer Defendants and the City for the reasons discussed immediately above. *Id.* (A plaintiff cannot avoid the bar on money damages by recasting his claims as equitable when there is no viable equitable remedy). Moreover, Alexander does not suggest, nor has the undersigned found any authority suggesting the Texas Constitution protects the rights allegedly violated during Alexander's arrest more broadly than the United States Constitution. Therefore, even assuming Alexander intended to state a claim for equitable relief based on alleged violations of the Texas Constitution, he has failed to do so for the reasons outlined in Sections A-D, above.

### F.  The "Doe" Defendants Are Entitled to Dismissal

Plaintiff filed suit on July 24, 2015. This Report and Recommendation issues on February 26, 2016. The time to serve defendants pursuant to Federal Rule of Civil Procedure 4(m) has long passed. Ordinarily, the appropriate course of action under Rule 4(m) would be a dismissal of the unserved "Doe" defendants without prejudice. Fed. R. Civ. P. 4(m). In this case, however, Plaintiff's allegations against the "Doe" defendants are that they participated in or ratified the conduct outlined in his Complaint. Plaintiff's substantive factual allegations concerning the alleged conduct have been weighed and found to state no constitutional violation, and therefore the court has the authority, *sua sponte*, to dismiss his claims against the unserved, unidentified "Doe" defendants with prejudice. *Lefford v. JP Morgan Chase & Co*., No, 1:15-cv-60-SA-DAS, 2015 U.S. Dist. LEXIS 119230 (N.D. Miss., Sept. 8, 2015).

## IV.   RECOMMENDATIONS

For the reasons stated above, the undersigned RECOMMENDS the District Court GRANT the City's Motion to Dismiss [Dkt. #12] and dismiss Plaintiff's claims against the City

of Round Rock WITH PREJUDICE.

The undersigned further recommends the District Court GRANT the Officers Defendants' Motion to Dismiss [Dkt. #13] and dismiss all of Plaintiff's claims against Officer Marciano Garza, Sergeant Greg Brunson, Sergeant Sampson Connell, and Officer Tracy Staggs WITH PREJUDICE.

The undersigned finally recommends that all of Plaintiff's claims against the unserved, unidentified "John Doe" police officer Defendants in this matter be DISMISSED with PREJUDICE.

## V.   OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED February 26, 2016

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE