FILED

2016 JUN 14  AM 9:06

CLERK US DISTRICT COURT
WESTERN DISTRICT TEXAS
BY_____ 

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

LIONEL ALEXANDER,
        Plaintiff,

-vs-

CITY OF ROUND ROCK, A MUNICIPAL ENTITY, OFFICER MARCIANO GARZA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, SGT. GREG BRUNSON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, SGT. SAMPSON CONNELL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, OFFICER TRACY STAGGS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, AND JOHN DOES, and CITY OF ROUND ROCK POLICE OFFICERS, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY,
        Defendants.

CAUSE NO.:
A-15-CA-00617-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant City of Round Rock (the City)'s Motion to Dismiss [#12] and Plaintiff Lionel Alexander's Response [#17] thereto; Defendants Greg Brunson, Sampson Connell, Marciano Garza, and Tracy Staggs (Individual Defendants)'s Motion to Dismiss [#13], Plaintiff's Response [#16] thereto, and the Individual Defendants' Reply [#18] in support; the Report and Recommendation of United States Magistrate Judge Mark Lane [#28]; Plaintiff's

Objections [#30], the City's Response [#36] thereto, and the Individual Defendants' Response [#37] thereto; and Plaintiff's Motion to Extend Scheduling Order Deadlines [#33].[1]

All matters in this case were referred to United States Magistrate Judge Mark Lane for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Plaintiff is entitled to de novo review of the portions of the Magistrate Judge's report to which he filed specific objections. 28 U.S.C. § 636(b)(1). All other review is for plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Nevertheless, this Court has reviewed the entire file de novo, and adopts the Magistrate Judge's report and recommendations subject to the modifications set forth in this opinion.

## Background

This is a civil rights action brought by Plaintiff Lionel Alexander, who was arrested for resisting a search after a police officer observed Plaintiff engaging in allegedly suspicious behavior. The defendants are the City of Round Rock, Texas, Officer Garza, Sergeant Greg Brunson, Sergeant Sampson Connell, Officer Tracy Staggs, and "John Does," an unknown number of unidentified police officers who allegedly participated in Plaintiff's arrest.[2] Plaintiff brings suit under 42 U.S.C. § 1983 for alleged violation of his First, Fourth, Fifth, and Fourteenth

---

[1] Plaintiff's Motion to Extend Scheduling Order Deadlines [#33] is hereby GRANTED.

[2] The Court notes that Plaintiff's suit against Officer Garza, Sergeant Greg Brunson, Sergeant Sampson Connell, Officer Tracy Staggs, and an unidentified number of "John Does" officers in their official capacities is redundant of Plaintiff's claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity."). The Court therefore DISMISSES Plaintiff's official-capacity claims. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (stating the district court correctly dismissed the plaintiff's allegations against the municipal officers in their official capacities, "as these allegations duplicate claims against the respective governmental entities themselves").

2

Amendment rights under the federal Constitution, and under the Texas Constitution for alleged violation of his rights secured by Article 1, sections 8, 9, 10, and 19.

The arrest that forms the basis of Plaintiff's claims took place on the evening of September 26, 2013 in the parking lot of the Extended Stay America Hotel where Plaintiff had rented a room. Compl. [#1] ¶ 13. Plaintiff was returning to the hotel around 9:15 p.m. when he saw a stray cat in the hotel's parking lot. According to Plaintiff, he intended to feed the cat, so he stopped, climbed out of his car, and "peered into the grass" to look for the cat. *Id.* ¶ 16. When he could not find the cat, Plaintiff returned to his car to park closer to his hotel room. Upon returning to his car, Plaintiff noticed a police vehicle in the parking lot. Plaintiff claims "[h]e did not know why the police car was there, but assumed it was not significant and went about his business." *Id.* at ¶ 17. The police car, driven by Officer Garza, turned on its lights and stopped Plaintiff.

Officer Garza approached Plaintiff's car and informed him he had stopped Plaintiff because Officer Garza was curious as to what Plaintiff was doing. Plaintiff provided Officer Garza with his driver's license but informed Officer Garza he would not answer any other questions. Officer Garza then "radioed for backup[,] citing 'noncompliance.'" *Id.* ¶ 19. Officer Garza remained by Plaintiff's window while waiting for backup and told Plaintiff to keep his hands where Officer Garza could see them until the other officers arrived. When the officers arrived, Officer Garza asked Plaintiff to exit his car. Plaintiff asked Officer Garza for his reasoning, to which Officer Garza replied "[b]ecause I asked you to." *Id.* ¶ 24. Plaintiff responded by stating he "didn't think he was legally required to do so." *Id.*

According to Plaintiff, at that moment, Officer Garza and several other officers pulled Plaintiff out of the car and pinned him face down on the ground. *Id.* Plaintiff felt "at least three

3

officers on top of his body, manipulating his limbs and putting pressure on his torso, neck, and hard." *Id.* ¶ 25. The officers then handcuffed Plaintiff and placed him on the curb. Standing over Plaintiff, Officer Garza asked Plaintiff whether he was "ready to talk." *Id.* ¶ 26. Plaintiff again refused and cursed in response. The officers shackled Plaintiff's legs, and Officer Garza informed Plaintiff he was under arrest, allegedly citing disorderly conduct for uttering an expletive in a public place. Plaintiff admits, however, that Officer Garza listed in his police report "resisting a search" as his reason for arresting Plaintiff. *Id.* ¶ 31.

After Plaintiff was arrested, the officers searched his person and his car, finding nothing illegal or suspicious. Officer Garza drove Plaintiff to the Round Rock police station before Plaintiff was transferred to the Williamson County Jail, where he remained until 5:00 p.m. the next day.

On October 7, 2013, Plaintiff filed a complaint against Officer Garza with the Round Rock Police Department. The police department investigated Plaintiff's complaint, and determined that while the events did in fact occur, Officer Garza's conduct was "within the policy of the Round Rock Police Department." *Id.* ¶ 37.

Plaintiff initiated this action by filing his original complaint on July 24, 2015. Plaintiff claims he sustained "injuries to his mouth" and suffered emotional and psychological injury as a result of the injury. *Id.* ¶ 33. Specifically, Plaintiff alleges he is now "fearful of being groundlessly abused by police officers." *Id.* Plaintiff seeks compensatory and punitive damages, attorneys' fees, and declaratory and injunctive relief.

The City and the Individual Defendants filed separate motions to dismiss on September 18, 2015. *See* City's Mot. Dismiss [#12]; Individual Defs.' Mot. Dismiss [#13]. On February 26, 2016, the Magistrate Judge issued his report and recommendation, to which Plaintiff objected on

March 11, 2016. R. & R. [#28]; Obj. [#30]. Plaintiff argues the Magistrate Judge erred by, among other things, relying on facts outside of the complaint,[3] finding there was reasonable suspicion for Plaintiff's detention and probable cause for Plaintiff's arrest, concluding there was no excessive force, and dismissing Plaintiff's claims with prejudice.

## Analysis

### I.     Legal Standard—Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

---

[3] As to this contention, the Court agrees. In finding the initial stop of Plaintiff was supported by reasonable suspicion, the Magistrate Judge considered facts alleged in the defendants' answer, such as the defendants' assertion that the area Officer Garza was patrolling had recently witnessed an increase in crime and Officer Garza's belief that Plaintiff's behavior was consistent with "attempted burglary, solicitation, or trafficking." Answer [#14] ¶ 3.04. Without converting the defendants' motions into motions for summary judgment, the Court finds these facts are not properly considered at the motion to dismiss stage, where the Court must assume the facts alleged in Plaintiff's complaint are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.  Application

### A.  Section 1983 Claims

In this § 1983 action, Plaintiff argues his constitutional rights were violated by his arrest and subsequent detention. Specifically, he alleges: (1) Officer Garza lacked reasonable suspicion to stop Plaintiff and detain him when Plaintiff refused to answer Officer Garza's questions; (2) the Individual Defendants lacked probable cause to arrest Plaintiff and subsequently conduct a search incident to that arrest; (3) the Individual Defendants used excessive force in arresting him; and (4) the Individual Defendants retaliated against Plaintiff for exercising his First Amendment right to free speech and his Fifth Amendment right to remain silent. Plaintiff also brings § 1983 claims against the City for maintaining a policy or custom which allows officers to make investigative stops without reasonable suspicion and unlawfully search, seize, employ excessive force, and retaliate against an arrestee.

1.  **Individual Defendants**

The Individual Defendants argue Plaintiff's § 1983 claims should be dismissed because they are protected by qualified immunity. "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). The qualified immunity analysis itself involves two considerations: (1) whether the public official's conduct violated an actual constitutional right, and (2) whether the public official's actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (internal quotation marks and citations omitted).

In this Circuit, qualified immunity protects government officials from liability for damages when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question beyond debate. *Id.* (citing *Morgan v. Swanson*, 659 F.3d 359, 370–71 (5th Cir. 2011) (en banc)). "In short, '[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)). In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999).

a.  **Unlawful Detention**

Plaintiff claims the Individual Defendants unlawfully detained him in violation of his Fourth Amendment rights. Specifically, Plaintiff alleges Officer Garza's initial stop was unconstitutional, because it was not supported by reasonable suspicion. "To state a claim for

7

unlawful detention, a plaintiff must allege: (1) a detention occurred; and (2) the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring." *Coons v. Lain*, 277 F. App'x 467, 470 (5th Cir. 2008) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

Plaintiff has adequately alleged a detention occurred within the meaning of the Fourth Amendment. Accordingly, the issue is whether the detention was based on "specific and articulable facts that lead [the officer] to reasonably suspect that a person is committing, or is about to commit, a crime." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2000) (discussing *Terry*, 392 U.S. at 88). "The Fourth Amendment requires only some minimum level of objective justification for the officers' actions—but more than a hunch—measured in light of the totality of the circumstances." *Michelletti*, 13 F.3d at 840. The Supreme Court has adopted a dual inquiry for evaluating the reasonableness of an investigatory stop: "whether the officer's action was justified at its inception, and whether [the officer's actions were] reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

In his complaint, Plaintiff alleges he was standing outside of his car in the hotel parking lot "peer[ing] into the grass" in the dark. Compl. [#1] ¶ 16. After losing sight of a stray cat, Plaintiff returned to his car to drive off at the same time he noticed Officer Garza's police car for the first time. Based on the totality of the circumstances alleged, Officer Garza had reasonable suspicion to stop Plaintiff and inquire as to why Plaintiff was peering into the grass in the dark and appeared to flee upon spotting the police car. Moreover, he had reasonable suspicion to extend Plaintiff's detention long enough to take call for backup before requesting Plaintiff exit his car to ensure the officers' safety. *See United States v. Sharpe*, 470 U.S. 675, 686–87 (1985) (stating the permissible length of an investigative detention depends on whether officers were

"diligently pursuing" the inquiry, and may include time reasonably needed to "enlist . . . the help of local police" when appropriate); *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)) (recognizing traffic stops "are 'especially fraught with danger to police officers'"). Because the facts alleged do not make out a constitutional violation, the Court does not reach the issue of qualified immunity.

Accordingly, the Court DISMISSES Plaintiff's Fourth Amendment claim for unlawful detention.

        **b.**    **False Arrest**

Plaintiff next claims the Individual Defendants are liable for false arrest because they lacked probable cause to arrest him. To prevail on a § 1983 claim for false arrest, the plaintiff must prove that the officer made the arrest without probable cause. *Vela v. White*, 703 F.2d 147, 150 (5th Cir. 1983). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (quoting *United States v. Levine*, 80 F.3d 128, 132 (5th Cir. 1996)).

Accordingly, to pass muster under the Fourth Amendment, Officer Garza must have had probable cause at the moment of Plaintiff's arrest. Although unclear from Plaintiff's complaint, Plaintiff seems to suggest he was under arrest when the officers forcibly removed him from the car. *See* Resp. [#16] at 6. Likewise, the Individual Defendants suggest Plaintiff was under arrest when the officers removed Plaintiff from the car; according to the Individual Defendants, Plaintiff's resistance to Officer Garza's order to step out of the car provided probable cause to arrest him. *See* Reply [#18] at 4.

9

Under Texas law, an individual may be arrested for resisting a search if he intentionally obstructs a person he knows is a peace officer from effecting an arrest or search by using force against that officer. TEX. PEN. CODE § 38.03(a). It is no defense to prosecution that the search was unlawful. *Id.* § 38.03(b). "A police officer has qualified immunity if he reasonably but mistakenly concludes that probable cause is present." *Massey v. Wharton*, 477 F. App'x 256, 260 (5th Cir.2012) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). In this case, the Court finds Officer Garza's decision to arrest Plaintiff for resisting a search—given Plaintiff's refusal to Officer Garza's questions, coupled with his questioning of Officer Garza's authority to direct Plaintiff to exit the vehicle—was reasonable. Because the Individual Defendants are entitled to qualified immunity, the Court DISMISSES Plaintiff's Fourth Amendment claim for false arrest.

    c.    **Excessive Force**

Plaintiff claims the Individual Defendants used excessive force by pulling him from the car, pinning him face down on the ground, "mash[ing]" his face into the concrete, and pressing a boot or knee into the back of his neck. *See* Compl. [#1] ¶ 25. Plaintiff further claims he felt at least three officers on top of him, manipulating his limbs and applying pressure to his torso, neck, and head.

It is clearly established the Fourth Amendment confers a right to be free from excessive force during an arrest. *See Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (per curiam) (explaining an arrestee has a clearly established right to be free from excessive force). To overcome the Individual Defendants' qualified immunity claim, Plaintiff must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Id.* Whether the force used was excessive or unreasonable is a fact-intensive that depends on the "totality of the circumstances."

*Tennessee v. Garner*, 471 U.S. 1, 8–9 (2010). In making this determination, the Fifth Circuit has instructed courts to consider "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627–28 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The ultimate question "'is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* at 628 (quoting *Graham*, 490 U.S. at 397).

Even accepting Plaintiff's non-conclusory allegations as true, Plaintiff's excessive force claim fails. "To state a Fourth Amendment excessive force claim, a plaintiff must allege the existence of more than de minimis injury." *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 712 (W.D. Tex. 2015). According to the Fifth Circuit, "[t]he determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (quoting *Ikerd v. Blaire*, 101 F.3d 430, 435 (5th Cir. 1996)). That the officers' arrest of Plaintiff was unlawful based on the facts alleged does not mean that any force used by the officers to effectuate the arrest was necessarily excessive. *See id.* Rather, Plaintiff's excessive force claim is "separate and distinct" from his false arrest claim, and the Court must therefore "analyze the excessive force claim without regard to whether the arrest itself was justified." *Id.* at 417; *see, e.g., Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) ("[I]n a case where police effect an arrest without probable cause . . . but use no more force than would have been reasonable necessary if the arrest or detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an

additional claim for excessive force."); *Bashire v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006) ("When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest.").

The Fifth Circuit recently affirmed a district court's grant of summary judgment on a plaintiff's excessive force claim, where the summary judgment record showed the plaintiff "suffered abrasions to his hands and knees, some pain in his back and neck, and unspecified problems with his asthma." *Brooks v. City of West Point, Miss.*, No. 14-60357, 2016 WL 556360, at *3 (5th Cir. Feb. 11, 2016). In this case, the only physical injury Plaintiff specifically alleges is "injuries to his mouth." Compl. [#1] ¶ 33. Without more, Plaintiff's vague allegation of "injuries to the mouth" is insufficient to give rise to a constitutional claim for excessive force.

Plaintiff also claims psychological injuries, including humiliation, stress, anguish, damage to his relationships and reputation, loss of educational and professional opportunities, and fear of retribution for exercising his constitutional rights in the future. While purely psychological injury may sustain a Fourth Amendment claim for excessive force, *see Flores*, 381 F.3d at 397-98, "only *substantial* psychological injuries are sufficient to satisfy the injury element of a § 1983 claim for excessive force." *Martin v. City of Alexandria Mun. Police Dep't*, No. CIV A 03-1282, 2005 WL 4909292, at *11 (W.D. La. Sept. 16, 2005). As currently plead, Plaintiff's allegations of psychological injury do not rise to the level of "*substantial* psychological injur[y]." *Id.* Accordingly, the Court DISMISSES Plaintiff's Fourth Amendment claim for excessive force.

### d.     Retaliation

Plaintiff claims he was retaliated against for exercising his rights under the First and Fifth Amendments. To prevail on a First Amendment retaliation claim, Plaintiff must demonstrate that (1) he was engaged in constitutionally protected activity, (2) the officers' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Plaintiff alleges Officer Garza informed him he was being arrested for uttering an expletive in a public place in violation of a disorderly conduct statute, not for resisting a search as the police recorded in the report. *See* Compl. [#1] ¶ 27. Importantly, however, Plaintiff alleges that at the time of Officer Garza's alleged statement, the officers had already removed Plaintiff from his car, handcuffed him, and place him on the curb. *Id.* ¶¶ 26, 27. Given these facts, the officers' adverse actions could not have been substantially motivated by Plaintiff's exercise of a constitutionally protected right, because by the time Plaintiff uttered an expletive, Plaintiff was already arrested.[4]

Similarly, to state a Fifth Amendment retaliation claim, Plaintiff must allege: "(1) a specific constitutional right, (2) the [officers'] intent to retaliate against [Plaintiff] for his . . . exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *11 (W.D. Tex. Nov. 19, 2014) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998) (describing retaliation elements in the context of a prisoner's § 1983 claim)). In his complaint, Plaintiff states, without any factual enhancement, that "he was retaliated against for exercising his constitutional right not to answer Officer

---

[4] Although unclear from Plaintiff's complaint, to the extent Plaintiff is asserting a claim for retaliatory use of excessive force post-arrest, the Court DISMISSES this claim for failure to provide specific, well-pleaded facts in support.

13

Garza's illegal questions during his unlawful seizure." Compl. [#1] ¶ 47. Although Plaintiff provided a formulaic recitation of the elements of a retaliation claim, "[m]ere conclusionary allegations of retaliation will not be enough to withstand a proper motion for dismissal of the [retaliation] claim." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). A plaintiff "must allege more than his personal belief that he is the victim of retaliation." *Id.* As currently pled, Plaintiff's conclusory allegations are insufficient to support an inference that any adverse taken by the officers was motivated by Plaintiff's invocation of his Fifth Amendment right against self-incrimination. *See, e.g., Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *10–11 (W.D. Tex. Nov. 19, 2014) (dismissing the plaintiff's retaliation claims for "merely recit[ing] in conclusory fashion the elements" of retaliation under both the First and Fifth Amendments).

Accepting all well-pleaded allegations as true, the Court concludes Plaintiff has not stated a valid claim for retaliation under either the First or Fifth Amendment. Accordingly, Plaintiff's retaliation claims are DISMISSED.

### 2. The City

Plaintiff alleges the City is liable under § 1983 for failing to provide adequate police training and establishing an unconstitutional policy or custom which permitted officers to search, seize, use excessive force, and retaliate against an arrestee in violation of the First, Fourth, Fifth, and Fourteenth Amendments. A municipality may not be held liable under § 1983 "solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs to Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). Instead, to establish a municipality's liability under § 1983, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's constitutional injury. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 694 (1978). "[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of

constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow*, 614 F.3d at 167. A policymaker is a person or entity "who has 'the responsibility for making law or setting policy in any given area of a local government's business.'" *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). "Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law." *Matthews v. City of San Antonio*, No. SA:14–CV–566–DAE, 2014 WL 7019984, at *3 (W.D. Tex. Dec. 11, 2014).

Plaintiff makes three factual allegations to support his claim for municipal liability: (1) because the Internal Affairs Section of the Round Rock Police Department issued an opinion stating Officer Garza's conduct conformed to the City's policies, these policies must be unconstitutional, since Officer Garza's conduct was unconstitutional; (2) documents requested from the City reveal the City provides no training to its officer as to what constitutes reasonable suspicion sufficient to justify an investigatory stop; and (3) Plaintiff possesses evidence of at least three other instances where Round Rock police officers committed constitutional violations similar to those described in his complaint.

Importantly, however, Plaintiff has failed to identify any specific policymaker responsible for the policies which allegedly caused the constitutional violations, but simply asserts "[t]here is a policymaker who is responsible" for these policies and "he or she had actual

or constructive knowledge of that fact." Resp. [#17] at 13. Because Plaintiff has not identified any specific policymaker, he has not pled sufficient facts to survive a motion to dismiss on his municipal liability claims.[5] *See, e.g., Matthews*, 2014 WL 7019984, at *3 (dismissing plaintiff's municipal liability claims for failure to specifically identify the policymaker); *Chalmers v. City of Dall.*, No. 3:14–CV–36–N, 2014 WL 1778946, at *3 (N.D. Tex. May 5, 2014) (same); *Pivonka v. Collins*, No. 3:02–CV–742–G, 2002 WL 1477455, at *4 (N.D. Tex. July 5, 2002) (agreeing with the defendant-city's contention that the plaintiffs' failure to plead "specific facts on [the policymaker] element of a § 1983 claim renders the plaintiffs' complaint defective" and noting "there is abundant case law in this circuit that a plaintiff must identify a policymaker in a § 1983 action against a municipality").

Accordingly, Plaintiff's claims for municipal liability are DISMISSED.

**B.    State Claims**

Plaintiff sues the City and Individual Defendants under Article I, Sections 8, 9, 10, and 19 of the Texas Constitution and the Texas Tort Claims Act. As an initial matter, the City argues, and the Court agrees, that because Plaintiff has asserted state law tort claims against the City, the Individual Defendants' employer, the claims against the Individual Defendants should be dismissed. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(e) ("If a suit is filed under this chapter

---

[5] The Court likewise notes Plaintiff has failed to sufficiently plead the existence of an official policy. In his complaint, Plaintiff appears to allege the Individual Defendants' actions were part of a customary practice sanctioned by the City, which "permits the unlawful seizure, search, arrest, and physical abuse of citizens, as well as retaliation for the exercise of citizens' constitutional rights." Compl. [#1] ¶ 39. Plaintiff further alleges he is aware of three other instances where Round Rock police officers committed constitutional violations similar to those complained of here. *Id.* ¶ 42. Without more, these allegations are too vague to survive a motion to dismiss, where "a plaintiff suing a municipality must provide fair notice to the defendant, and this requires more than genetically restating the elements of municipal liability." *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 844–45 (S.D. Tex. 2011) (granting the defendant-city's motion to dismiss where the plaintiff merely alleged a pattern of constitutional violations); *Matthews*, 2014 WL 7019984, at *5 (finding the plaintiff's statement that that the defendant-city knew of "numerous prior incidents of police officers using excessive force upon citizens" was insufficient to allege an official policy permitting excessive force). Likewise, Plaintiff must plead more than the conclusory allegation that the City's failure to train its employees evinces "deliberate indifference." Stating "a single incident is sufficient to establish the City's deliberate indifference" is not, in fact, sufficient. Compl. [#1] ¶ 44.

16

against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the government unit.").

As to Plaintiff's remaining state law claims against the City, these claims are viable only if they are claims for which sovereign immunity is waived under the Texas Tort Claims Act. *See City of El Paso v. Heinrich*, 284 S.W. 3d 366, 380 (Tex. 2009) ("[G]overnmental immunity protects government officers sued in their official capacities to the extent it protects their employers"). The Texas Tort Claims Act governs "all tort theories that may be alleged against a governmental entity whether or not it waives that immunity." *Gil Ramirez Group, L.L. C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 415 (5th Cir. 2015); *Franka v. Velasquez*, 332 S.W.3d 367, 378 (Tex. 2011) (holding that tort suits against the government are brought "under the act" regardless of whether the Texas Tort Claims Act waives the government's immunity); *Mission Consol. I.S.D. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) ("[A]ll tort theories alleged against a government unit, whether it is sued alone or together with its employees, are presumed to be 'under [the Tort Claims Act].'").

Plaintiff asserts state law claims for unlawful detention, false arrest, and excessive force. These are intentional torts, for which the Texas Tort Claims Act does not waive governmental immunity. TEX. CIV. PRAC. & REM. CODE § 101.057 (stating Chapter 101 "does not apply to a claim: . . . arising out of assault, battery, false imprisonment, or any other intentional tort"). Therefore, these claims cannot be maintained against the City.

In addition to monetary damages (which, as discussed above, are barred by the state's immunity from suit), Plaintiff requests various forms of injunctive or declaratory relief. To the extent these claims for nonmonetary relief are grounded in state law, they are not barred by sovereign immunity. *See City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007). Nevertheless,

Plaintiff lacks standing to seek injunctive or declaratory relief because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy" sufficient to justify injunctive or declaratory relief. *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003). Plaintiff complains of events that took place in September of 2013, and has not alleged "any facts or circumstances showing that there is a 'real and immediate threat that he will again suffer a similar injury in the future.'" *Humphreys v. City of Ganado*, 467 F. App'x 252, 257 (5th Cir. 2012). As Plaintiff has not alleged facts that "demonstrate either continuing harm or a real and immediate threat of repeated injury in the future," neither declaratory nor injunctive relief is appropriate in this case. *Id.* The Court therefore DISMISSES Plaintiff's state law claims.

Finally, to the extent Plaintiff seeks punitive damages against the City, this claim must fail, because Plaintiff can point to no statute expressly authorizing punitive damages against a municipal entity. *See* TEX. CIV. PRAC. & REM. CODE § 101.024 (barring recovery of punitive damages); *Newport v. Fact Concerts*, 453 U.S. 247, 260 (1981) (noting exemplary damages are not generally permitted against a municipality unless the statute expressly authorizes it).

## Conclusion

Accordingly,

IT IS ORDERED that Plaintiff Lionel Alexander's Objections [#30] are GRANTED IN PART and DENIED IN PART as described in this opinion;

IT IS FURTHER ORDERED that the Report and Recommendation of the United States Magistrate Judge Mark Lane [#28] is ADOPTED IN PART as described in this opinion;

IT IS FURTHER ORDERED that Defendant City of Round Rock's Motion to Dismiss [#12] is GRANTED;

IT IS FURTHER ORDERED that Defendants Greg Brunson, Sampson Connell, Marciano Garza, and Tracy Staggs's Motion to Dismiss [#13] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff Lionel Alexander's Motion to Extend Scheduling Order Deadlines [#33] is GRANTED; and

IT IS FINALLY ORDERED that Plaintiff Lionel Alexander's claims are DISMISSED WITHOUT PREJUDICE.

SIGNED this the 13th day of June 2016.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE